**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>**JAMES SAMATAS**,<br><br>DEBTOR. | CHAPTER 7<br>CASE NO. 20-BK-17355<br><br>HON. A. BENJAMIN GOLDGAR<br><br>**TELEPHONIC HEARING**<br>HEARING DATE: JANUARY 25, 2021<br>HEARING TIME:. 10:00 A.M. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **Monday, January 25, 2021, at 10:00 a.m.**, I will appear before the Honorable A. Benjamin Goldgar, or any judge sitting in that judge's place, and present the U.S. Trustee's **UNITED STATES TRUSTEE'S MOTION TO CONVERT OR DISMISS CASE PURSUANT TO 11 U.S.C. 1112(b) (RECOMMENDING CONVERSION),** a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is 161 500 0972 and the password is 726993. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

/s/ *David Paul Holtkamp*
David Paul Holtkamp, Trial Attorney
Office of the U.S. Trustee
219 S. Dearborn, Room 873
Chicago, IL 60604
(312) 353-5014

## CERTIFICATE OF SERVICE

      I, David Paul Holtkamp, an attorney, certify that I served a copy of this notice, the attached motion, and proposed orders on each entity shown on the attached list at the address shown and by the method indicated on December 22, 2020, before 5:00 p.m.

                                                      */s/ David Paul Holtkamp*

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants**

- Sarah E Barngrover     amps@manleydeas.com
- Adam B Hall     amps@manleydeas.com
- David Paul Holtkamp     David.Holtkamp@usdoj.gov
- Oksana Koltko     oksana.koltko@dlapiper.com, docketingchicago@dlapiper.com;chicago-bankruptcy-0273@ecf.pacerpro.com
- Patrick S Layng     USTPRegion11.ES.ECF@usdoj.gov

**Parties Served via First Class Mail:**

*See Attached Exhibit A - Declaration of Mailing/Certificate of Service*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>**JAMES SAMATAS**,<br><br>DEBTOR. | CHAPTER 7<br>CASE NO. 20-BK-17355<br><br>HON. A. BENJAMIN GOLDGAR<br><br>**TELEPHONIC HEARING**<br>HEARING DATE: JANUARY 25, 2021<br>HEARING TIME: 10:00 A.M. |

**UNITED STATES TRUSTEE'S MOTION TO CONVERT OR DISMISS CASE PURSUANT TO 11 U.S.C. 1112(b) (RECOMMENDING CONVERSION)**

Patrick S. Layng, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), by and through his attorney, David Paul Holtkamp, moves pursuant to 11 U.S.C. § 1112(b), for an order converting the above captioned chapter 11 case to chapter 7 for "cause," or in the alternative, for an order dismissing this case. In support of this motion, the U.S. Trustee states as follows:

**INTRODUCTION**

1.    It has become apparent that this filing is not a good faith attempt to reorganize the Debtor's debts and obtain a discharge. It is instead an attempt to stall proceedings instituted by the Debtor' ex-spouse to foreclose on a house that he owns in the Hollywood Hills worth between $8 to $10 million. The Debtor has asserted in filings in this case, and testified at the 341 meeting, that he is currently attempting to sell that house for an amount that will satisfy all liens against it, including that of his ex-spouse, and once he is a able to do that he will seek to voluntarily dismiss this

3

case. In the meantime, the Debtor does not want to make the required disclosures and comply with the Bankruptcy Code and Rules.

2. The Debtor has so far failed to disclose in his Schedules that he owns significant interests through trusts. He is currently attempting to close a multimillion sale of his trust's interests in a large healthcare business, all while his schedules reflect that he has no interest in any trust whatsoever.

3. Further, the Debtor, has not filed a single monthly operating report, he has not paid his U.S. Trustee fees, and only filed his schedules and other required documents after the U.S. Trustee filed a motion to dismiss due to that failure. Those documents are incomplete at best. Additionally, the Debtor has not filed a motion to retain a broker to sell the house he is currently trying to sell (although he has several working to do so without authorization), and he wants to dismiss this case after the sale and keep any equity amounts to himself even though he has significant unsecured debts. In short, the Debtor would like to camp out in bankruptcy until he is able to sell the house in California (and while his trust is attempting sell his significant health care business). He does not want to disclose his assets or be bothered with complying with his requirements as a chapter 11 debtor while he does that. He instead asserts those requirements impose unnecessary expenses when he just needs the automatic stay for a little while.

4. This case should be converted, for cause under § 1112(b), to ensure that all assets and liabilities are disclosed and to move this case forward by administering

this estate pursuant to the Code and Rules for the benefit of all creditors, not just for the Debtor's select purposes.

## JURISDICTION

5. This is a core proceeding concerning the administration of the estate pursuant to 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine pursuant to IOP 15(A) and LR 40.3.1 of the United States District Court for the Northern District of Illinois.

6. Venue of this case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The U.S. Trustee has standing to file the Motion under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

## FACTUAL SUMMARY

8. James Samatas ("Debtor") commenced this case on September 21, 2020, by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

9. Pursuant to Bankruptcy Rule 1007(c), the Debtor had until October 5, 2020 to file the documents required by 11 U.S.C. § 521. The Debtor failed to file a number of required documents by that date, including Schedules and the Statement of Financial Affairs, and did not request and extension of time to file those documents.

10. The U.S. Trustee filed a motion to dismiss or convert (preferring conversion) on October 14, 2020. *See* Dkt. No. 14.

11. The Debtor responded to the U.S. Trustee's motion to dismiss or convert by asserting that he is attempting to sell real estate located in the Hollywood Hills at

5

1424 Tanager Way, Los Angeles, CA (the "California House") and if that sale completed he would be "just short of being able to satisfy all [secured] creditors" and the sale would "mitigate time and expenses of this court and creditors" in pursuing this case. *See* Dkt. No. 16. The Debtor then committed to filing all required documents within 21 days "provided the Motions to Dismiss/Convert are duly denied[.]" *See id.*

12. The U.S. Trustee's motion to dismiss was presented on October 26, 2020, and the Court continued the hearing until November 9, 2020, but explained to the Debtor that he had for file the required documents before the motion to dismiss would be denied.

13. The Debtor filed the outstanding required forms on November 11, 2020.

14. Before those forms were filed, on October 22, 2020, U.S. Trustee started the 341 meeting of creditors, however, did not conclude the meeting because the Debtor had not yet filed all required documents. On November 19, 2020, the U.S. Trustee reconvened the meeting of creditors after the documents were filed. The U.S. Trustee concluded the meeting on that date.

15. The Debtor's testimony at the meeting of creditors, and the documents filed in this case, reflect that this case was filed because the Debtor's ex-spouse, Carlye Samatas, has a very large judgment against the Debtor and a second position lien on the California House. Ms. Samatas was foreclosing on the California House which apparently would have realized enough money to pay off the first mortgage on the house and satisfy her claim, but not much else.

16. The Debtor believes that he is capable of selling the California House for more if he is given time, and he may even be able to realize some equity in a sale.

17. On November 13, 2020, the U.S. Trustee filed a motion for authority to conduct a 2004 examination of the Debtor and Ms. Samatas. *See* Dkt. No. 26. That motion was granted, but required the U.S. Trustee to seek information from the Debtor first. *See* Dkt. No. 29. The U.S. Trustee has served a subpoena on the Debtor requesting documents and for an oral examination.

18. The U.S. Trustee has issued this subpoena because the veracity of the Debtor's Schedules is in question. For example, the Debtor testified at the meeting of creditors that he is a trustee and beneficiary of two trusts: (1) the James Samatas Revocable Trust, and (2) the James Samatas Discretionary Trust. However, the Debtor completed his schedules asserting that he had no interests in any trust. *See* Dkt. No. 22, p. 7 of 23. The Debtor has still not amended this even after the U.S. Trustee brought it to his attention.

19. The Debtor testified at the meeting of creditors that his interest in these trusts and their assets are irrelevant and not part of this bankruptcy case because those assets are not his personally. He also asserts that at least as to the James Samatas Discretionary Trust that there is a spendthrift provision and therefore creditors are not entitled to information about what is in that trust.

20. These trusts are significant because it appears that the Debtor holds interests in a web of healthcare businesses, generally under the name of Lexington Healthcare, worth millions of dollars through the James Samatas Discretionary

Trust. The James Samatas Discretionary Trust is currently, along with the co-owners, is attempting to sell the Lexington Healthcare business for tens of millions of dollars.

21. The Debtor also asserts on his Schedule I that he has no income from any source, but on Schedule J he discloses expenses of $56,850 per month. *See* Dkt. No. 22, pp. 20-21 of 23. The Debtor likewise asserts on his Statement of Financial Affairs that he had no income from operating a business or through any other source in the two years preceding his filing. *See* Dkt. No. 20, p. 2 of 12.

22. But the Debtor testified that he had $1,000 in cash in his pocket during the 341 meeting and that he continues to provide significant monthly support to his adult children.

23. The Debtor testified at the meeting of creditors that he simply intends to sell the California property and then dismiss this case. The Debtor does not intend to make any payments or administer any estate assets to his unsecured creditors in this case.

24. The Debtor has failed to comply with several Code and Bankruptcy Rule requirements. The Debtor filed this case in September and has failed to file a single monthly operating report. As of now he owes reports for September, October, and November of 2020. This leaves the U.S. Trustee and the Court completely in the dark about what is going on with this estate. He also has not paid his quarterly U.S. Trustee fees.

25. The Debtor also testified on several occasions that he is actively working with several real estate brokers to sell the California House. The Debtor has not filed an application to employ any such professional.

## ARGUMENT

26. In relevant part, Section 1112(b) of the Bankruptcy Code provides that on the request of a party in interest, and after notice and a hearing, the court shall convert the case to Chapter 7 or dismiss the case, whichever is in the best interests of creditors of the estate, so long as the movant establishes "cause." *See* 11 U.S.C. § 1112(b)(1).

27. Section 1112(b)(4) sets forth a list of sixteen grounds that constitute "cause" for conversion or dismissal. *See* 11 U.S.C. § 1112(b)(4)(A)-(P). This list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in section 1112(b)(4). *See In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009); *In Matter of Strug-Division*, LLC, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007). An additional unenumerated ground to convert or dismiss is the debtor's lack of good faith in filing the case. *See In re LBJV, Ltd.*, 544 B.R. 401, 404 (Bankr. N.D. Ill. 2016).

28. Here a number of enumerated grounds to convert or dismiss are present, including the Debtor's failure to file monthly operating reports, *see* § 1112(b)(4)(F); the Debtor's failure to pay U.S. Trustee fees, *see* § 1112(b)(4)(K); the Debtor's failure to timely pay taxes after the petition, *see* § 1112(b)(4)(I); the Debtor's gross mismanagement of the estate, *see* § 1112(b)(4)(B); and because there is no prospect of

9

rehabilitation and the estate is suffering a significant or continue loss due to significant negative cashflow and unpaid property taxes, *see* § 1112(b)(4)(A). The Debtor also failed to file this case as a good faith attempt to reorganize and obtain a discharge. This case should be converted (the U.S. Trustee's preference), or in the alternative, dismissed.

## I.   The Debtor Failed to Timely File Monthly Operating Reports.

29.  The "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" constitutes "cause" to convert or dismiss a case. *See* 11 U.S.C. § 1112(b)(4)(F); *see also In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011). Debtors are required to file reports during the pendency of a Chapter 11 case. *See* 11 U.S.C. §§ 704(a)(8), 1106(a)(1), 1107(a).

30.  "Timely and accurate financial disclosure is the life blood of the Chapter 11 process." *In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). The reports are necessary to provide financial information about the debtor, and "a report filed late may be the practical equivalent of a failure to file any financial information at all." *In re Hyperion Found., Inc.*, No. 08-51288-NPO, 2009 WL 2477392, at *6 (Bankr. S.D. Miss. Aug. 11, 2009). A Chapter 11 debtor who fails to timely file monthly operating reports thus fails to "satisfy timely [a] filing or reporting requirement established by" the Bankruptcy Code, which in turn constitutes "cause to convert or dismiss" the debtor's case. *See* 11 U.S.C. §§ 1112(b)(1) & (b)(4)(F); *see also In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) ("Refusal or inability to provide

10

financial disclosure sounds the death knell of a chapter 11 case. The failure to file monthly operating statements…whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings,") (internal quotations and citations omitted).

31. The Debtor has failed to file the required monthly operating report for the entire case, including for the months of September, October, and November. The Debtor has demonstrated during this case that he does not want to do what is required of him to comply with the Code and the Rules, and only does things after being admonished by the Court or after prompting by the U.S. Trustee through a motion to dismiss. The complete failure to file monthly operating reports, keeping everyone in the dark about what is going on with the estate, is another example of the Debtor doing below even the minimum to proceed with a chapter 11 case. The Debtor's failure to timely file monthly operating reports constitutes cause for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(F).

## II.  The Debtor Failed to Pay U.S. Trustee Quarterly Fees.

32. The failure to pay quarterly fees required by 28 U.S.C. § 1930 constitutes cause for dismissal or conversion. *See* 11 U.S.C. § 1112(b)(4)(K). Every Chapter 11 debtor (outside of Subchapter V) is required to pay quarterly fees to the U.S. Trustee until the case is converted or dismissed. *See* 28 U.S.C. § 1930(a)(6). The U.S. Trustee may assess interest for unpaid fees. *See* 31 U.S.C. § 3717.

33. Again, the Debtor is not complying with the Code and Rules and would instead like to camp out in bankruptcy only until he is able to sell the California House. Failure to pay fees is cause to convert or dismiss.

### III. The Debtor Failed to Timely Pay Property Taxes During the Case.

34. The failure to timely pay taxes owed after the filing of the case constitutes cause to convert or dismiss. *See* 11 U.S.C. § 1112(b)(4)(I). The requirement that chapter 11 debtors remain current on taxes during the case includes property taxes. *See In re Builders Grp. & Dev. Corp.*, 2014 Bankr. LEXIS 2092, at *22 (Bankr. D.P.R. May 8, 2014). The purpose of requiring debtors to remain current on taxes is to ensure that the estate's assets are not diminished or squandered during the case by non-payment at the expense of other creditors.

35. The Debtor here testified that he is not paying his mortgages or the property taxes on either the California House for his residence in Illinois. The banks with first mortgages against these properties may be making those payments on behalf of the Debtor, but those payments increase the lien amounts thereby decreasing the amounts available to other creditors. The non-payment of these taxes injures the estate and its creditors and constitutes cause to convert this case.

### IV. The Debtor's Gross Mismanagement of the Estate.

36. Gross mismanagement of the estate is cause to convert or dismiss a case. *See* 11 U.S.C. § 1112(b)(4)(B). "A debtor-in-possession is vested with significant powers under the provision of the Bankruptcy Code. As is often the case, those powers come with certain responsibilities. Significantly, a debtor-in-possession owes a

fiduciary duty to its creditors." *Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007). Gross mismanagement includes the debtor's failure to comply with reporting and statutory requirements, including through the timely filing of monthly operating reports and payment of U.S. Trustee fees. *See* 7 Collier on Bankruptcy P 1112.04 (16th 2020). It also includes a debtor's failure to seek court approval when required, including approval of professional engagements, assets sales and transfers, or to obtain loans. *See id.* The debtor must also keep the Court and parties "apprised of the debtor's business operations" and not squander estate assets and funds. *See id.*

37.    The Debtor here has failed on all counts. As provided above, the Debtor has failed to file operating reports and pay U.S. Trustee fees. He has also failed to make full disclosures on his schedules. Additionally, during this case the Debtor is actively working with real estate professionals to sell the California House without seeking approval to have those professionals employed. Certainly those professionals will seek payment out of the sale proceeds. Any professional working for the estate must be employed under strict requirements, *see* 11 U.S.C. § 327, and the Debtor has failed to seek approval of these undisclosed professionals.

38.    The Debtor has also failed to disclose how he is paying his nearly $56k per month in expenses, including how he is continuing to support his adult children. To the extent that he is using assets he came into bankruptcy with, everyday he continues to use those assets is a day of significant diminution of the estate. And

13

giving away money to adult children is not in the best interest of creditors or in line with the Debtor's duty as a fiduciary for the benefit of creditors.

39. The Debtor is grossly mismanaging the estate. He continues to treat the estate as if he were not in bankruptcy. But he has duties while he is under the protection of the automatic stay, and one of those is to not mismanage the estate to the detriment of creditors. Cause exists under 11 U.S.C. § 1112(b)(4)(B).

## V. Debtor's Estate Suffers from a Substantial or Continuing Loss to or Diminution and Debtor Lacks a Reasonable Likelihood of Rehabilitation.

40. The Court may convert a case for "cause" if the Court finds that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A); *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009). There are two elements to consider under Section 1112(b)(4)(A): (i) a "substantial or continuing loss to or diminution of the estate," and (ii) the "absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A). Both elements are present here.

### A. Substantial or Continuing Loss to or Diminution of the Estate.

41. Courts have held that a "[n]egative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss or diminution of the estate standard for purposes of § 1112(b)." *Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007); *see also In re Schriock Constr.,* 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("This element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained

14

a negative cash flow position after the entry of the order for relief.") "Negative cash flow means that the estate's current liabilities are increasing more rapidly than cash is available to pay as due." 7 *Collier on Bankruptcy* ¶ 1112.04[6][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)

42.     In the present case, a continuing loss and diminution of the estate exists because the Debtor has no ability to pay the estate's liabilities while his Schedules reflect no less than $56,000 per month in liabilities. Debtor reported no current income and no income for the 2-year period leading up to this bankruptcy filing on his Statement of Financial Affairs. The Debtor would like to sell the California House, but he only wants to pay the liens against the property and then keep any excess for himself, and not pay unsecured creditors. The Debtor, therefore, has no ability to pay any of his ongoing expenses in this case and everyday he remains under the protection of the stay, his creditors are harmed significantly.

**B. Absence of Reasonable Likelihood of Rehabilitation.**

43.     "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991). Courts have also found that a debtor lacks a reasonable likelihood of rehabilitation where its only source of income is speculative. *See In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 743–44 (Bankr. N.D. Ill. 2004). Moreover, rehabilitation has been defined as whether the debtor will be able to reestablish its business—"the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the

debtor's business prospects justify continuance of the reorganization effort." *In re Costa Bonita Beach Resort Inc.*, 479 B.R. 14, 43 (Bankr. D.P.R. 2012) (quoting 7 *Collier on Bankruptcy* ¶ 1112.04[6][a][ii]).

44. The Court should convert this case because the Debtor has no realistic prospects for reorganization. In fact, the Debtor has no intention to reorganize in this case. He testified that all he wants to do is sell the California House and then dismiss the case leaving all of his unsecured creditors in the lurch. The estate has no reasonable likelihood of rehabilitation, and thus satisfies the second prong of 11 U.S.C. §1112(b)(4)(A).

## VI. The Debtor Failed to File this Case In Good Faith.

45. A lack of good faith in filing the petition constitutes cause to dismiss or convert under 11 U.S.C. § 1112(b). *See In re Lake Mich. Beach Pottawattamie Resort LLC,* 547 B.R. 899, 905 (Bankr. N.D. Ill. 2016). Lack of good faith is a case-by-case analysis, but courts have identified several factors used to determine whether a filing was made without good faith. *See id.* Those factors include, among others: (1) the petition was filed on the eve of foreclosure, (2) the debtor has no going concern, (3) there is no possibility of reorganization, (4) the debtor has negative income, (5) the case is a two-party dispute, and (5) the filing was solely to impose the automatic stay.

46. Here, as provided above, the case was filed to stop the immediate foreclosure of the California House by the Debtor's ex-spouse. Disputes between the Debtor and his ex-spouse are the primary motivator in this case, and this case is being used as part of that two-party dispute. The Debtor has no intention of using this case

16

to resolve any other disputes or unsecured debts. The Debtor has used this case to impose the automatic stay and that is all he wants out of it. Everything else, in the Debtor's opinion, will just create additional expense and should not be required of him. The Debtor also has no going concern value or even any regular income. He has no chance of reorganizing and has no intent of even trying. The Debtor filed this case without the requisite good faith. The case should be converted, or if in the best interest of creditors, dismissed.

47. Based on the foregoing, the U.S. Trustee submits that cause exists under Section 1112(b) to dismiss or convert this case to Chapter 7. The U.S Trustee recommends conversion as opposed to dismissal because there appear to be significant assets and significant unsecured debts to satisfy. The best interest of creditors would therefore be served through conversion instead of dismissal.

## CONCLUSION

WHEREFORE, the U.S. Trustee respectfully requests this Court enter an order dismissing this case, or alternatively, converting this case to a case under Chapter 7 of the Bankruptcy Code, and for such other relief as this Court deems just.

        RESPECTFULLY SUBMITTED:

        PATRICK S. LAYNG
        UNITED STATES TRUSTEE

Dated: December 22, 2020    By:   /s/ David Paul Holtkamp
        David Paul Holtkamp, Trial Attorney
        Office of the U.S. Trustee
        219 S. Dearborn St., Room 873
        Chicago, Illinois  60604
        202-567-1489