# EXHIBIT 6

# LESTER & CANTRELL, LLP
## ATTORNEYS AT LAW

Writer's E-Mail Address:
cheggi@lc-lawyers.com

January 31, 2020

*Via Email to: nburns@jamsadr.com*

The Honorable Gail A. Andler (Ret.)
JAMS
5 Park Plaza, Suite 400
Irvine, California 92614

        Re:    *Samatas v. Cohen & Lord, et al. – Joint Letter Brief re : Dispositive Motion*
              JAMS Ref.:   1220060864
              Our File No.: 1281-001

Dear Judge Andler:

      The purpose of this joint letter is to set forth the parties' positions on Respondents Cohen & Lord, PC, James F. Boyle, and Bruce M. Cohen's request for leave to file a Motion for Summary Disposition under the authority of the California Arbitration Act. The Parties have met and conferred regarding this matter, and with the issue unresolved, this joint letter results.

## Respondents' Position

      Respondents seek leave to submit a dispositive motion that would eliminate a substantial portion of the damages sought by Claimant James Samatas in this matter, which in turn would streamline and expedite this arbitration while affording each party a fair opportunity to present their side of the dispute.

      The requested dispositive motion would focus on Claimant's assertion that Respondents committed legal malpractice and breached their fiduciary duties to Claimant when—during their handling of the underlying lawsuit surrounding Claimant's purchase of an 8.25-million-dollar home in the Hollywood Hills—they allegedly failed to assert (1) fraud, negligent misrepresentation, and general negligence claims against Claimant's real estate broker, Bridget Martens, and her agency; and (2) general negligence claims against the seller's real estate brokers. According to Claimant, these alleged failures together account for more than $4 million of the approximately $8 million in damages he now seeks from Respondents. These allegations are based on the assertion that Martens and the sellers' brokers failed to inform Claimant that the Hollywood Hills house was not new, but instead was almost completely remodeled.

      These claims can be completely eliminated as a matter of law in light of undisputed evidence already elicited during the underlying case regarding disclosures by various parties to Claimant regarding whether the home he purchased was "brand new." After hearing many hours of evidence on the topic, the jury found that Claimant was aware that the house he purchased was not, in fact, new construction from the ground up, but instead consisted of remodel of and

Re: *Samatas v. Cohen & Lord*
Page 2
January 31, 2020

additions to an existing structure. This finding led the jury to conclude that although material misrepresentations had been made by certain defendants other than Martens—including the sellers' brokers—there was no reliance on the misrepresentations by Samatas, and thus the negligent and intentional misrepresentation claims failed against those defendants.

Given this finding by the jury, Claimant's present assertion that Respondents were negligent for not suing the sellers' brokers or Martens—whether on a common law negligence or fraud theory—is doomed to fail on the element of causation. If Claimant knew all along that the construction was a remodel, any misrepresentation by his own agent could not have been a cause of legal harm. Likewise, the negligence of his own agent in failing to discover and disclose that fact to him could not be a cause of legal harm. Moreover, since any general negligence claim that could have been asserted against the sellers' brokers would necessarily have been based on the same facts underlying the negligent and intentional misrepresentation claims that were already asserted against them at trial, that claim also could not have resulted in legal harm to Claimant. Accordingly, as a matter of law, Claimant cannot meet his burden in this matter of showing that the alleged breaches by Respondents were a legal cause of harm to him in this action.

As Respondents demonstrate below, the proposed motion is well within the arbitrator's discretion, would expedite and streamline the arbitration, and would not unfairly prejudice any party.

**Facts**

In this arbitration, Claimant James Samatas ("Claimant" or "Samatas") asserts claims against Respondents based on Respondents' representation of Samatas, his estranged wife Carlye Samatas ("Caryle") and the James Samatas Revocable Trust dated September 8, 1988 ("Trust") in an underlying construction defect and failure-to-disclose case styled *Carlye Samatas, et al. v. Nile Niami, et al.*, LASC Case No. BC456738 (the "Underlying Action"). The following brief recitation of facts is derived from documentary and testimonial evidence elicited during discovery, depositions, and trial in the Underlying Action.

*Purchase of the Property*

In 2009, a developer named Nile Niami purchased a residential property located at 1424 Tanager Way in the City of Los Angeles (the "Property") in partnership with Joseph and Gilat Englanoff. (Niami and the Englanoffs are collectively referred to as the "Sellers.") The Sellers purchased the Property for $3.9 million and began construction. During construction, the Sellers hired Drew Fenton, a broker at Hilton & Hyland Real Estate, Inc., and James Nasser, a broker at Westside Estate Agency, Inc., to market and sell the property. (Fenton, Nasser, Hilton & Hyland, and Westside are collectively referred to as the "Seller's Brokers".)

In early 2010, Carlye learned about the Property through her real estate broker, Bridget Martens, who had assisted the Samatases in finding and purchasing another home they owned in Beverly Hills. The Samatases claimed that during their first visit to the Property, Fenton marketed and represented to them that the house was brand new or newly constructed. The

Re: *Samatas v. Cohen & Lord*
Page 3
January 31, 2020

Samatases made an offer on the Property within 48 hours of their first walk-though of the property. During escrow, the Samatases discovered that the house was in fact an extensive remodel and that there were numerous defects that needed repairing. Despite the Samatases' knowledge of the defects and the fact that the Property was a remodel, on April 7, 2010, the Trust closed escrow and purchased the Property for $8,250,000.00.

*The Underlying Action*

Later, the Samatases and the Trust retained Respondents to represent them in a lawsuit related to the condition of the Property. On March 7, 2011, Respondents initiated the Underlying Action on behalf of the Samatases and the Trust by filing a complaint against the Sellers, the Sellers' Brokers, and others. The allegations of the complaint generally fell into two categories: (1) intentional and negligent misrepresentation claims against the Sellers and the Sellers' Brokers; and (2) construction defect claims against various architects, engineers, and contractors involved in the design and construction of the Property.

At trial of the Underlying Action, Samatas claimed that he would not have spent $8.25 million on the Property had he known it was a remodel. However, as his own trial testimony unfolded, it became apparent that Samatas was fully aware of the condition of the Property, including its previous extensive remodel, by the time that escrow closed on April 7, 2010. For example, Samatas acknowledged that he sent an email to an escrow agent on March 27, 2010, in which he stated, "I know that 1424 Tanager Way is considered a remodel, but there has been extensive construction work." Samatas also testified at trial that by March 25, 2010, he had received and read several reports prepared by investigators who had inspected the Property after the purchase. One of those reports stated that the Property "was reported to have been recently remodeled and expanded." Another report stated that "the home has been recently renovated[.]" Yet another report discussed "a one story interior chimney which appears to have been installed around time of house reconstruction in 2010[.]" Samatas admitted that these reports represented "an issue of concern" as to whether the Property was a new home or a remodel. He testified that despite his concern, he did not follow up with any of the inspectors to inquire as to the basis for their conclusions that the home was a remodel. That Samatas was well aware of the condition of the Property was corroborated by several other trial witnesses.

At the close of presentation of evidence, the jury submitted a special verdict as to the allegations made against the Sellers and the Sellers' Brokers, Nasser and Fenton. The special verdict asked whether Nasser and Fenton made a "representation of material fact." The jury found Nasser and Fenton did make a material misrepresentation. However, the <u>jury unanimously found that Samatas, on behalf of the Trust, knew about the falsity of the representation before the close of escrow in April 2010</u> and therefore there was no reliance and no causation. Thus, the Trust was "awarded" $0 for the intentional and negligent representation claims because there was no harm to the Trust.

Re: *Samatas v. Cohen & Lord*
Page 4
January 31, 2020

*The Malpractice Arbitration*

On August 15, 2017, Claimant (along with the Trust) filed a complaint in the Superior Court of Los Angeles alleging legal malpractice and breach of fiduciary duties against Defendants for their handling of the Underlying Action. Following Respondents' successful petition to compel arbitration, Claimant initiated this arbitration. In his JAMS Demand for Arbitration, Claimant highlights as one of the key asserted errors by Respondents "failing to name as defendants, all appropriate parties, including Claimants' own broker, Bridget Martens, and her company Sothebys . . . and failing to allege basic negligence and breach of fiduciary duty causes of action against her." Claimant's counsel also communicated to Respondents' counsel on March 30, 2018, that the alleged failure to assert claims against Martens accounts for approximately half of Claimant's alleged damages in this matter.

**The Arbitrator Has Discretion and Authority to Entertain the Proposed Motion**

The parties have agreed to arbitrate under the California Arbitration Act ("CAA"), codified at California Code of Civil Procedure section 1280 *et seq*. The CAA provides that the arbitrator "shall rule on the admission and exclusion of evidence and on questions of hearing procedure and shall exercise all powers relating to the conduct of the hearing." Cal. Code Civ. Proc. § 1282.2(c). At arbitration, "rules of evidence and rules of judicial procedure need not be observed." *Id.* at § 1282.2(d). Accordingly, the CAA gives the arbitrator the "implicit authority" to entertain a dispositive motion. *Schlessinger v. Rosenfeld, Meyer & Susman*, 40 Cal. App. 4th 1096, 1104 (1995).[1] The arbitrator has authority to consider such a motion even when Code of Civil Procedure section 437c has not been incorporated into the arbitration agreement and the motion need not be constrained by the summary procedures set forth in Section 437c. *Schlessinger*, 40 Cal. 4th at 1104. In addition, JAMS Rule 18 specifically authorizes the use of a dispositive motion in this arbitration: "The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue . . . provided other interested Parties have reasonable notice to respond to the request."

**The Proposed Motion is Well Within the Arbitrator's Discretion and Will Promote the Speed and Efficiency of the Arbitration**

Whether a dispositive motion is appropriate depends on the following factors: (1) the provisions of the arbitration agreement and the rules governing the arbitration; (2) the nature of

---

[1] In addition to *Schlessinger*, courts across the country have routinely upheld the use of dispositive motions at arbitration. *See, e.g., Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC*, 260 Fed. App'x 497, 499 (3d. Cir. 2008) (affirming a summary adjudication issued on res judicata and collateral estoppel grounds); *Ozormoor v. T-Mobile USA Inc.*, 2010 WL 3272620, *4 (E.D. Mich. Aug. 19, 2010) (affirming a summary adjudication issued on statute of limitation grounds); *Global Int'l Reinsurance Co. Ltd. v. TIG Ins. Co.*, 2009 WL 161086, *5 (S.D.N.Y. Jan. 21, 2009) (affirming a summary adjudication issued on plain meaning of contract grounds); *LaPine v. Kyocera Corp.*, 2008 WL 2168914, *10 (N.D. Cal. May 23, 2008) (affirming a summary adjudication issued on waiver and estoppel grounds); *Hamilton v. Sirius Satellite Radio Inc.*, 375 F. Supp. 2d 269, 273, 277 (S.D.N.Y. 2005) (affirming a summary adjudication issued on insufficient evidence grounds).

Re: *Samatas v. Cohen & Lord*
Page 5
January 31, 2020

the claims and defenses; (3) whether the availability of discovery and the opportunity to conduct adequate discovery before making or opposing a motion affords each party a fair opportunity to present its position. *Schlessinger*, 40 Cal. 4th at at 1111. <u>First</u>, as set forth above, the provisions of the arbitration agreement and the rules governing this arbitration permit the use of dispositive motions.

<u>Second</u>, Claimant's assertion that Respondents should have made claims against Martens and the Sellers' Brokers is well-suited to summary disposition. As with any legal malpractice/breach of fiduciary duty action, Claimant's case rises and falls on whether the alleged acts or omissions of Respondents *caused damages*—i.e. whether, but for the alleged breaches, Claimant would have obtained a more favorable result in the Underlying Action. *See Knutson v. Foster*, 25 Cal. App. 5th 1075, 1091, 1093-1094 (2018). The issue of causation may be decided as a matter of law if reasonable minds could not differ as to the legal effect of the evidence presented. *Kurinij v. Hanna & Morton*, 55 Cal. App. 4th 853, 864 (1997).

The jury in the Underlying Action heard Claimant's testimony on the subject of disclosure of the condition of the Property before the close of escrow. The jury unanimously decided that Claimant knew the Property was a remodel by the time escrow closed and, therefore, the misrepresentations regarding the condition of the Property made by certain of the defendants in the Underlying Action could not have induced Claimant to rely on them, and therefore caused no damages. It follows that misrepresentations of *the same material fact* (whether the Property was "brand new" or a remodel) by Martens could also not have resulted in Claimant's reliance, since he already knew it was a remodel. In short, this issue is well-suited for summary disposition because Claimant cannot prove any damages as a matter of law.

Had Respondents asserted general negligence/breach of duty claims against Martens and the Sellers' Brokers, they would have failed for the same reason. Sellers' Brokers, who did not have an agency relationship with Samatas, were limited to those duties imposed by regulatory statutes. As relevant here, Civil Code section 2079 required Sellers' Brokers only to "conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective buyer all facts materially affecting the value or desirability of the property that an investigation would reveal[.]" As to the "brand new" versus "remodel" issue, the jury has already found that the Sellers' Brokers made material misrepresentations, which, even if they did materially affect the value or desirability of the Property, could not have resulted in reliance by Samatas.[2] This claim fails, again, on causation.

---

[2] A seller's real estate agent owes no duty to verify seller's representations but only to "act in good faith and not convey the seller's representations without a reasonable basis for believing them to be true." *Robinson v. Grossman*, 57 Cal. App. 4th 634, 644 (1997). Here, the special verdict form already found that the Seller's Brokers made a material misrepresentation "without any reasonable grounds for believing it to be true." *See* Judgment on Jury Verdict, at 4:4-8. Accordingly, the issue was fully covered by the claims asserted at trial, and Samatas's knowledge of the remodel made any reliance on such misrepresentations impossible, so any negligence claim against Seller's Brokers would fail on causation grounds.

Claims against Martens based on professional negligence or breach of fiduciary duty, as opposed to misrepresentation, would have failed for the same reason. Under the common law and Civil Code, Martens' duty to Claimant included, as relevant here, the duty to investigate, discover, and disclose to Samatas the "material facts that may affect [Samatas's] decision." *Field v. Century 21 Klowden-Forness Realty*, 63 Cal. App. 4th 18, 25-26 (1998), *as modified* (Apr. 17, 1998). Even if Martens breached those duties, and failed to ascertain the material facts—that the home was not "brand new"—or did ascertain them but failed to disclose them to Samatas, there would have been no possibility of damages caused thereby, since Samatas *already knew those facts*.

*Third*, the proposed motion will be based on evidence that is already available to all parties, and the proposed briefing schedule (below) will allow Claimant to submit an opposition following the two depositions to be held in this matter. All of the facts necessary for the proposed motion will be taken from Respondent's file regarding the Underlying Action. That file has been provided to Claimants in its entirety. Other than Claimant himself, there is no other source of facts required to determine the motion. In any event, by the time Claimant opposes Respondent's motion, he will have had the chance to testify at his own deposition in this matter and to take the deposition of Respondent Jim Boyle, who was the handling attorney for the Underlying Action and tried the case on behalf of Claimant. Accordingly, Claimant will have been given a fair opportunity to present his position in opposition to this motion.

Respondents propose the following briefing schedule with dates already scheduled in *italics*:

- February 21, 2020 – Respondent's Dispositive Motion Due
- March 4, 2020 – *Claimant's Deposition of Jim Boyle (scheduled)*
- March/April 2020 – Respondents' Deposition of James Samatas (TBD)
- May 22, 2020 – Claimant's Opposition to Dispositive Motion Due
- June 5, 2020 – Hearing on Dispositive Motion
- June/July 2020 – Expert depositions, if necessary
- August 4, 2020 – *Arbitration Hearing (scheduled)*

### Claimant's Position

**Summary of Argument**

Respondent's request for leave to file a dispositive motion should be denied for two main reasons: 1) leave to file a dispositive motion, at this juncture, is premature, procedurally improper, and will cause a scheduling mess that will unnecessarily complicate matters down the line, and 2) Respondents have not met their burden in demonstrating the causation element for legal malpractice has not been met.

Re: *Samatas v. Cohen & Lord*
Page 7
January 31, 2020

1. **Leave to file a dispositive motion, at this juncture, is premature, procedurally improper, and will cause a scheduling mess that will unnecessarily complicate matters down the line:**

The opportunity to conduct adequate discovery <u>before</u> making or opposing a dispositive motion affords each party a fair opportunity to present its position (*Schlessinger v. Rosenfeld, Meyer, & Susman*, 40 Cal.App.4th (1995) 1096, 1104), and "especially where the arbitration lacks an explicit procedure for dispositive motions, courts must ensure that the party opposing such a motion is afforded a fair opportunity to present its position." *Schleisinger*, at 1112. Here, Parties have not had an opportunity to conduct adequate discovery, and parties previously sought, and fully briefed the issue, regarding Arbitrator Andler's discretion to allow further discovery in the form of additional depositions. Specifically, Arbitrator Andler granted leave, in determining that both parties, Respondent and Claimant, should be allotted time to take the depositions of two key party witnesses: Jim Boyle and James Samatas. Neither of these depositions have been conducted nor will there be an opportunity to do so, based on Respondents' proposed briefing schedule, until after the filing deadline for Respondent's dispositive motion.

Claimants assert that the depositions of *both* Messrs. Boyle and Samatas must be taken 1) *prior to* a determination regarding whether a dispositive motion here is even appropriate, let alone, 2) for purposes of a determination of the motion's merits. This is so that all relevant information is collected, and each party has a fair opportunity to present its position.

Notwithstanding the timing issues, Respondent's request for leave also wrongfully assumes that the testimony from each above-referenced deponent will not be impactful for purposes of deciding the merits of summary adjudication, or whether leave, even to file a dispositive motion should be granted in the first place. This is improper, as Messrs. Boyle and Samatas have been determined to be two pivotal witnesses and the need for each of their depositions was adamantly argued for and ultimately approved by the Arbitrator. It is Claimant's position that the testimony and evidence that will be elicited in both the Boyle and Samatas' depositions will undoubtedly support and/or refute the arguments which Respondent and Claimant intend to rely on in support of, and in opposition to, their respective positions regarding: whether leave should be granted in the first place, and on any dispositive motion. Accordingly, leave to file a dispositive motion should not be considered until *after* both depositions are taken and the parties are fully prepared to brief the issues, with the new testimony as part of the record.

Respondent's proposed briefing schedule is unnecessarily hurried, forcing Claimants to submit an opposition immediately following the depositions of two key witnesses without being afforded the opportunity to critically analyze the impact of their testimony. All of the facts necessary for the proposed motion and opposition have not been discovered and to allow leave for such a motion at this stage would be premature and duplicative; as arguably, following Messrs. Boyle and Samatas' depositions, new facts will come to light, which shall impact each side's arguments and positions related to the at-issue dispositive motion. Indeed, there is a high likelihood that a second briefing shall be requested, and need to take place, just to address

Re: *Samatas v. Cohen & Lord*
Page 8
January 31, 2020

whether such a dispositive motion is even appropriate. Accordingly, Claimants have not and will not be given a fair opportunity to present their position in relation to not only Respondent's current request for leave, but for any opposition to this phantom dispositive motion being sought. For the sake of efficiency, resources, and to keep matters on the right track, Respondent's request must be denied at this time.

<u>Claimants' Proposed Schedule</u>

To do as Respondents have proposed, right now, is wholly improper, in placing the cart before the horse, and Claimants reject Respondent's proposed briefing schedule, in light of the procedural flaws which the proposed schedule imposes.

Claimants, instead, propose that: Mr. Boyle's deposition (currently set for March 4, 2020) and Mr. Samatas' deposition (currently set for April 7, 2020) should proceed as scheduled, *and then*, if there is a truly a need for a dispositive motion, Respondents can *then* submit a [joint] letter for the Arbitrator's consideration. As much as such this results in the need to continue the arbitration date, then so be it, because Claimants had an opportunity to express their desire for a dispositive motion at the scheduling conference, but failed to do so. It is also more important to make sure this matter is arbitrated in a procedurally sound manner, than to rush towards what was already an early scheduled arbitration date.

Claimant's proposed schedule, taking into account Claimant's right to conduct adequate discovery and have a fair opportunity to present its positions, is as follows:

- March 4, 2020: Deposition of Jim Boyle (already set)
- April 7, 2020: Deposition of James Samatas (already set)
- Post-April 7, 2020 – TBD: Respondents may move for leave to bring a dispositive motion.

2. **Respondents have no viable basis in attempting to leapfrog over Samatas' negligence claims against Cohen because but for Cohen's negligence in mishandling misrepresentation claims against seller's brokers, *and* in failing to altogether name and allege causes of action against Martens and Sothebys, a better result would have been achieved**

Respondent's request for leave must also be denied because their argument in support thereof misconstrues the facts of the underlying Action, and the legal requirements that surround the causes of action which should have been [but were not] brought against Bridget Martens and Sothebys, to arrive at an erroneous conclusion.

First, while what Respondents are actually trying to say is unclear, it seems their argument is that the jury's verdicts on causes of action for intentional and negligent misrepresentation, in the underlying case, wondrously translate over to a sweeping conclusion that Mr. Samatas' entirety of claims for negligence and breach of fiduciary duty against his former broker, Bridget Martens, and her agency, Sothebys, *if they had been brought*, would have

Re: *Samatas v. Cohen & Lord*
Page 9
January 31, 2020

lacked merit, and been doomed from the start. Respondent's loosely tethered "theory" defies both logic and fact because the underlying matter's verdict form, which included causes of action for intentional and negligent misrepresentation *against seller's brokers* does not ascertain whether Mr. Samatas' *own broker*, Bridget Martens, and her agency were at fault, and the elements and standards used to determine the misrepresentation causes of action against seller's brokers are completely different than those which would have been used to determine negligence and breach of fiduciary duty against Martens/Sothebys.

To be clear, the central purpose of Claimant's malpractice action is not to challenge the trial court's findings in the underlying litigation. Instead, Claimant argues that the Respondent attorneys breached their duties, culminating in unfavorable decisions against Samatas in the underlying action. Had Respondents asserted general negligence claims against Martens and the Sellers' Brokers -- that is, specifically, that but for Cohen's failure to name Martens and Sotheby's International Realty and allege causes of action for negligence and breach of fiduciary duty, Mr. Samatas would have had the opportunity to prosecute and collect, at least some portion of the damages he sought (minus any findings of comparative negligence.) In other words, if causes of action had been pled and Ms. Martens and Sothebys named, at the very least, the jury would have had the opportunity evaluate breach of fiduciary and negligence claims, and if necessary, apportion damages on the basis of comparative negligence. The negligence claims would not have been altogether defeated like the misrepresentation causes of action against the seller's brokers were, if Martens and Sothebys had been named.

Second, in *Ruffalo v. Patterson* (1991) 234 Cal. App. 3d 341, 344, the sole issue before the Court of Appeal was whether Plaintiff was collaterally estopped, by the court's determination in the marital dissolution action, from raising issues with respect to the community or separate character of the certain property in the legal malpractice action. Plaintiff's contention in *Ruffalo* was that the court's decision therein would have been different absent the negligence of the attorney, who was the defendant in the action. The Court of Appeal ultimately agreed with Plaintiff stating that "To hold otherwise would be to rule that where an attorney's negligence has caused a court to make an erroneous adjudication of an issue, the fact that the court has made that adjudication absolves the attorney of all accountability and responsibility for his negligence. That cannot be and is not the rule." *Id.*

The court's reasoning in *Ruffalo* is equally applicable here because it shall be Mr. Samatas' contention that the Jury's decision in the underlying matter would have been different, absent the negligence of his attorneys, which caused the erroneous adjudication of certain issues. Take for example how in the underlying matter, the jury found in favor of seller's brokers, in relation to the intentional and negligent misrepresentation causes of action Mr. Samatas had brought against them. The jury, however, never determined whether Samatas justifiably relied on the seller's brokers material misrepresentation," which was Question 6, because the jury answered "yes," in relation to Question 5 regarding how Samatas was "aware of the falsity of the representation [that the house was not brand new] before the close of escrow.[3]" (See Exhibit 1

---

[3] Respondent claims in the joint letter that "the jury found that Claimant was aware that the house he purchased was not, in fact, new construction from the ground up, but instead consisted of remodel of and additions to an existing structure. This finding led the jury to conclude that although material misrepresentations had been made by

Re: *Samatas v. Cohen & Lord*
Page 10
January 31, 2020

for Judgment on Jury Verdict in underlying matter.) The jury's determination by way of the judgment on jury verdict still leaves a lot to be determined, partly because it is expected that Mr. Samatas may testify in a manner that demonstrates there was additional evidence and information, which if aptly presented by his prior counsel, Cohen, to the jury in the underlying case, would have resulted in their finding that he ultimately *was not* aware of the falsity of the representations, and that he *was* justified in relying on the seller's brokers representations. In addition the mere fact that Question 5 was allowed to be incorporated into the jury verdict form may suggest malpractice in this situation, because the language in Question 5 does not match the language for any elements required under the Judicial Council of California Civil Jury Instructions. (See CACI 1900). Here, there is evidence that suggests others reaffirmed to Mr. Samatas, that the house was brand new, however, the way the jury verdict form was designed and allowed to be used at trial, did not allow for such determinations to be made, and this ultimately impacted the underlying trial's results.

To be clear, Mr. Samatas is contending the outcome of the underlying litigation would have been better absent Cohen's negligence in 1) not only handling the claims which were brought against seller's brokers (misrepresentation), but 2) just as importantly, in failing to altogether identify and name his own brokers, Martens and Sotehbys as defendants, in relation to causes of action for negligence and breach of fiduciary duty. Because of the nature of legal malpractice cases, which require case-within-case determinations, there will often be some overlap of issues between the malpractice action and the underlying proceeding. But as *Ruffalo* demonstrates, despite such overlap, the issues being litigated for purposes of the here and now, are not the same.

### 3. Conclusion

For the reasons mentioned by Claimant herein, Respondent's motion for leave should be denied.

Jointly submitted by:

Mark S. Lester, Esq.                       Shawn Shaffie, Esq.
Lester & Cantrell, LLP                     Parker Mills LLP
Attorneys for Respondents                  Attorneys for Claimant

---

certain defendants other than Martens—including the sellers' brokers—there was no reliance on the misrepresentations by Samatas, and thus the negligent and intentional misrepresentation claims failed against those defendants." Respondent's claim is inaccurate. The record shows that the judgment on jury verdict never actually determined whether Mr. Samatas was justified in relying and/or relied on the seller's broker's representations. That determination was not reached. The jury determined that Mr. Samatas was aware of the falsity of the representation prior to closing but never whether Mr. Samatas was justified in his reliance, nor whether anyone reaffirmed the house as being new. "The rule of issue preclusion, sometimes referred to as collateral estoppel…is that a party ordinarily may not relitigate an issue that he fully and fairly litigated on previous occasion." 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment. § 190, p . 623, citing Rest. 2d Judgments, §§ 27, 28.) What is at issue is whether Mr. Samatas was precluded, as a result of Claimaint's negligence, from fully and fairly litigating matters.