**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>**JAMES SAMATAS**,<br><br>DEBTOR. | CHAPTER 7<br>CASE NO. 20-BK-17355<br><br>HON. A. BENJAMIN GOLDGAR<br><br>**TELEPHONIC HEARING**<br>HEARING DATE: MAR. 8, 2021<br>HEARING TIME: 10:00 A.M. |

**UNITED STATES TRUSTEE'S REPLY IN SUPPORT OF HIS MOTION TO CONVERT OR DISMISS CASE PURSUANT TO 11 U.S.C. 1112(b)**

1. This case should be converted, or alternatively dismissed. For the first three and a half month of this case the Debtor used it as nothing more than a hiding place. The U.S. Trustee, this Court, and the Debtor's creditors admonished him on multiple occasions about not complying with Code and Rules. Yet he refused asserting instead that those requirements impose unnecessary expenses when he just needed the automatic stay until he was able to complete the sale of his California House and dismiss the case.

2. During that time of recalcitrance, the Debtor failed to file any operating reports, pay U.S Trustee fees, or file Schedules and other required documents. Only after the U.S. Trustee filed his first motion to dismiss as an apparent "cudgel" did the Debtor finally file his outstanding Schedules and required documents. However, those documents were nearly a month late by that point, and while the documents were technically on file, they contained inaccurate statements contradicted by the

Debtor's own 341 testimony and his statements made in his amended schedules filed well over two months after that.

3. Now, when faced with the U.S. Trustee's second motion to dismiss (which is not a mere prod used to goad the Debtor into compliance), and a similar motion filed by his ex-wife and joined by other creditors, the Debtor has decided that he will be fully compliant moving forward. He has now employed an attorney, paid his U.S. Trustee fees, filed amended Schedules, and says he has a strategy to reorganize. Thus, the Debtor apparently believes he may be noncompliant for months and then when confronted with consequences, simply do what he was required to do from the being. That is not true. As provided in the U.S. Trustee's motion and below, "cause" existed to convert or dismiss this case pursuant to § 1112(b) when the motion was filed, and it still exists now.

## ARGUMENT

4. As provided in the U.S. Trustee's motion to dismiss, several grounds existed under § 1112(b)(4) to dismiss or convert this case when the motion was filed. *See* 11 U.S.C. § 1112(b)(4)(A)-(P). And while the Debtor has attempted to come into compliance under those sections, several bases still exist.

**I.    The Debtor's Unexcused Failure to Timely File Monthly Operating Reports Remains.**

5. The "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" constitutes "cause" to convert or dismiss a case. *See* 11 U.S.C. § 1112(b)(4)(F); *see also In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011). Debtors are required

2

to file reports during the pendency of a Chapter 11 case. *See* 11 U.S.C. §§ 704(a)(8), 1106(a)(1), 1107(a).

6. Until the U.S. Trustee filed his second motion to dismiss there were no operating reports filed at all. Section 1112(b)(4)(F) expressly provides that it is the "unexcused" failure to "timely" file operating reports that justifies dismissal or conversion. *See* 11 U.S.C. § 1112(b)(4)(F). Filing operating reports months late after facing the significant possibility of conversion or dismissal does not operate as an adequate excuse for not filing them on time in the first place. Nor does filing the operating reports late retroactively make those filings timely. The operating reports were late and without adequate excuse. Cause remains. This case should be converted, or in the alternative dismissed.

II. **The Debtor Failed to Timely Pay Property Taxes During the Case.**

7. The failure to timely pay taxes owed after the filing of the case constitutes cause to convert or dismiss. *See* 11 U.S.C. § 1112(b)(4)(I). The requirement that chapter 11 debtors remain current on taxes during the case includes property taxes. *See In re Builders Grp. & Dev. Corp.,* 2014 Bankr. LEXIS 2092, at *22 (Bankr. D.P.R. May 8, 2014). The purpose of requiring debtors to remain current on taxes is to ensure that the estate's assets are not diminished or squandered during the case by non-payment at the expense of other creditors.

8. The Debtor now asserts that if allowed to proceed as debtor-in-possession, he will complete the sale of the California House and use the proceeds to "reinstate and become current on the first mortgage indebtedness due to Bank of America

3

encumbering the Natoma Property [his primary residence], including the payment of any post-petition real estate taxes ([…] approximately $27,000 per year)." *See* Response, p. 25, Dkt. No. 90.

9. The Debtor has squandered months in this case when he should have been pursuing a strategy that would pay his taxes (and mortgages) when due. The Debtor now says he can become current on taxes and the mortgage once he sells the California House. The Debtor asserts that he is attempting to sell the California House "by owner." But this appears to be a questionable decision. Systems such as the Multi-Listing Service (MLS) are not available to "by owner" sellers, which would markedly increase the property's exposure. On the other hand, a chapter 7 trustee has the same ability to sell the estate's interests in real property to pay creditors, and in a way that would put the interests of creditors first, instead of after the interests of the Debtor. Thus, a trustee may be able to sell the property faster than the Debtor.

10. But ultimately, the Debtor has the obligation to remain current on taxes during the case, not just to promise to become current in the future. Cause remains.

### III.    The Debtor's Gross Mismanagement of the Estate.

11. Gross mismanagement of the estate is cause to convert or dismiss a case. *See* 11 U.S.C. § 1112(b)(4)(B). "A debtor-in-possession is vested with significant powers under the provision of the Bankruptcy Code. As is often the case, those powers come with certain responsibilities. Significantly, a debtor-in-possession owes a fiduciary duty to its creditors." *Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007). Gross mismanagement includes the

4

debtor's failure to comply with reporting and statutory requirements, including through the timely filing of monthly operating reports and payment of U.S. Trustee fees. *See* 7 Collier on Bankruptcy P 1112.04 (16th 2020). It also includes a debtor's failure to seek court approval when required, including approval of professional engagements, assets sales and transfers, or to obtain loans. *See id.* The debtor must also keep the Court and parties "apprised of the debtor's business operations" and not squander estate assets and funds. *See id.*

12. There can be little doubt that this bankruptcy estate was grossly mismanaged for more than 3 months. In addition to failing to file operating reports on time, pay his mortgages and taxes, and file required documents in this case to keep the parties apprised of the Debtor's operations, the Debtor's late filed operating reports reflect that the Debtor transferred thousands to his adult children while this case was pending. That was done without notice or court approval. A Debtor cannot make gifts to his children during a bankruptcy case.

13. As provided above, the Debtor here has also decided to try to sell the California property himself. This is decision has proven to be less than fruitful so far in this case with no contract for sale. It appears the Debtor may be letting his personal feeling about this property get in the way of pursuing a sale that is in the best interest of his creditors. A broker should be used to ensure the sale occurs quickly, with the most exposure, and at the highest price possible. The Debtor refuses to do this and has shown another instance of estate mismanagement.

14. The Debtor has and is grossly mismanaging the estate. He continues to treat the estate as if he were not in bankruptcy. But he has duties while he is under the protection of the automatic stay, and one of those is to not mismanage the estate to the detriment of creditors. Cause exists under 11 U.S.C. § 1112(b)(4)(B).

IV. **Debtor's Estate Suffers from a Substantial or Continuing Loss to or Diminution and Debtor Lacks a Reasonable Likelihood of Rehabilitation.**

15. The Court may convert a case for "cause" if the Court finds that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A); *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009). There are two elements to consider under Section 1112(b)(4)(A): (i) a "substantial or continuing loss to or diminution of the estate," and (ii) the "absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A). Both elements are present here.

**A. Substantial or Continuing Loss to or Diminution of the Estate.**

16. Courts have held that a "[n]egative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss or diminution of the estate standard for purposes of § 1112(b).'" *Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007); *see also In re Schriock Constr.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("This element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief.") "Negative cash flow means that the estate's current liabilities are increasing more rapidly than cash

is available to pay as due." 7 *Collier on Bankruptcy* ¶ 1112.04[6][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)

17. As provided in the motion to convert or dismiss, a continuing loss and diminution of the estate exists because the Debtor has no ability to pay the estate's liabilities while his Schedules reflect no less than $56,000 per month in liabilities. The Debtor asserts that he will sell the California House and then file a plan, but the Debtor does not appear to like any of the current offers that he has for the sale of the property and is not using a broker to sell the property. How he is advertising this property for sale remains a mystery. In short, the Debtor has no ability to pay his continuing expenses, including the mortgages and taxes on the two multimillion-dollar houses he owns and every month the mortgages and taxes on those houses eat into more and more of the estate's equity that could be used to pay unsecured creditors.

**B. Absence of Reasonable Likelihood of Rehabilitation.**

18. "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991). Courts have also found that a debtor lacks a reasonable likelihood of rehabilitation where its only source of income is speculative. *See In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 743–44 (Bankr. N.D. Ill. 2004). Moreover, rehabilitation has been defined as whether the debtor will be able to reestablish its business—"the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business

prospects justify continuance of the reorganization effort." *In re Costa Bonita Beach Resort Inc.*, 479 B.R. 14, 43 (Bankr. D.P.R. 2012) (quoting 7 *Collier on Bankruptcy* ¶ 1112.04[6][a][ii]).

19. The Court should convert this case because the Debtor has no realistic prospects for reorganization. The Debtor's operations and past conduct to not justify continuance of the reorganization effort. The Debtor has provided little more than a rough outline of his strategy for moving this case to plan confirmation. That outline is speculative on when the sale of the California House and his healthcare interests will occur to fund the plan. And even the idea of filing a plan is new, as the Debtor for months asserted that he would only need to sell the California House and then he would dismiss this case.

20. It also appears that the Debtor's exclusivity period to file a plan has come and gone with no extension. *See* 11 U.S.C. § 1121(b). The prospect of having a confirmable plan on file still appears a distant thought. The Debtor was given ample time and opportunity to move this case along and there is no justification for providing him any additional time. The second prong is satisfied.

## V. The Debtor Failed to File this Case In Good Faith.

21. As provided in the U.S. Trustee's motion to covert or dismiss, this case was filed in bad faith. The case was filed to stop the immediate foreclosure of the California House by the Debtor's ex-spouse. Disputes between the Debtor and his ex-spouse are the primary motivator in this case, and this case is being used as part of that two-party dispute. The Debtor had no intention of using this case to resolve any

8

other disputes or unsecured debts. The Debtor has used this case to impose the automatic stay and that is all he wants out of it. The Debtor also has no going concern value or even any regular income. The Debtor did not intend to use this case to reorganize when it was filed. The Debtor filed this case without the requisite good faith.

22. The Debtor now attempts to fix his past misconduct, but it is far too late. Ultimately, there can be little doubt that there are sufficient assets here to satisfy all the creditors whether this case goes through a chapter 11 or a chapter 7. The only question is whether the Debtor is hit with the blunt instrument of liquidation, or whether the Debtor should be allowed to continue to control his assets and attempt pay his creditors over time in a way that does the least violence to his lifestyle. The Debtor here squandered his right to control this case through is cavalier approach to these proceedings over several months. Cause exists to convert, and the creditors have spoken that they believe conversion is in their best interest. The case should be converted under § 1112(b).

## CONCLUSION

23. Based on the foregoing, the U.S. Trustee submits that cause exists under Section 1112(b) to dismiss or convert this case to Chapter 7. The U.S Trustee recommends conversion as opposed to dismissal because there appear to be significant assets and significant unsecured debts to satisfy. The best interest of creditors would therefore be served through conversion instead of dismissal.

9

                              RESPECTFULLY SUBMITTED:

                              PATRICK S. LAYNG
                              UNITED STATES TRUSTEE

Dated: February 22, 2021        By:   /s/ David Paul Holtkamp
                                            David Paul Holtkamp, Trial Attorney
                                            Office of the U.S. Trustee
                                            219 S. Dearborn St., Room 873
                                            Chicago, Illinois 60604
                                            202-567-1489

## CERTIFICATE OF SERVICE

I, David Paul Holtkamp, an attorney, certify that I served a copy of this notice, the attached motion, and proposed orders on each entity shown on the attached list at the address shown and by the method indicated on February 22, 2021, before 5:00 p.m.

*/s/ David Paul Holtkamp*

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants**

- **Sarah E Barngrover**    amps@manleydeas.com
- **Joseph A Florczak**    jflorczak@mcguirewoods.com
- **Adam B Hall**    amps@manleydeas.com
- **Timothy R Herman**    therman@grsm.com, jswick@grsm.com
- **David Paul Holtkamp**    David.Holtkamp@usdoj.gov
- **Oksana Koltko**    oksana.koltko@dlapiper.com, docketingchicago@dlapiper.com;chicago-bankruptcy-0273@ecf.pacerpro.com
- **Patrick S Layng**    USTPRegion11.ES.ECF@usdoj.gov
- **Ariel Weissberg**    ariel@weissberglaw.com, Hava@weissberglaw.com;chris@weissberglaw.com;jacob@weissberglaw.com