**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES SAMATAS, | ) | Chapter 7 |
| | ) | Case No. 20-17355 |
| Debtor. | ) | |
| | ) | Hon. A. Benjamin Goldgar |
| _____ | ) | |
| FRANK J. KOKOSZKA, CHAPTER 7 | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 21 A ___ |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES SAMATAS DISCRETIONARY TRUST | ) | |
| U-A-D 9/8/88, JAMES SAMATAS, not | ) | |
| individually, but in his capacity as Co-Trustee of | ) | |
| the James Samatas Discretionary Trust u/t/a dated | ) | |
| 9/8/88, CRAIG LABUS, not individually, but | ) | |
| in his capacity as Co-Trustee of the James Samatas | ) | |
| Discretionary Trust u/t/a dated 9/8/88 and JAMES | ) | |
| SAMATAS | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT TO DETERMINE INTEREST IN PROPERTY, TO AVOID
FRAUDULENT TRANSFER, AND FOR RELATED RELIEF**

Plaintiff, Frank J. Kokoszka, not individually but solely as Chapter 7 Trustee (the "Plaintiff") of the bankruptcy estate of James Samatas (the "Debtor"), by and through his undersigned counsel Springer Larsen Greene, LLC, and pursuant to 11 U.S.C. §§541, 544 and 550, and Fed. R. Bankr. P. 7001(1), brings this adversary proceeding to determine the estate's interest in the James Samatas Discretionary Trust U-A-D dated 9/8/88 (the "Discretionary Trust") to avoid certain fraudulent transfers made by Debtor to the Discretionary Trust, and for related relief.

1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b), and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

2.      This adversary proceeding constitutes a core proceeding within the meaning of one or more subsections of 28 U.S.C. § 157(b).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4.      On September 21, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois.

5.      On March 8, 2021, the case was converted to Chapter 7. Frank J. Kokoszka was appointed as Chapter 7 Trustee and continues to serve in that capacity.

6.      The Debtor has held an Illinois law license since 1979, which has been inactive since 2009.

## BACKGROUND

### The Discretionary Trust

7.       On or around September 8, 1988, the Debtor's father, George Samatas, formed the Discretionary Trust for the Debtor's benefit.  The Discretionary Trust was, on information and belief, one of three identical discretionary trusts formed for the benefit of George Samatas' children. *Exhibit A, Discretionary Trust*.

8.      The Discretionary Trust is an Illinois Trust and is governed by Illinois law. *See* Discretionary Trust, Article III.

2

9.      At its inception, there were three trustees of the Discretionary Trust: George

Samatas, Debtor, and George Colis.

10.     Subsequently, George Samatas passed away and George Colis was replaced as

trustee by Craig Labus ("Labus"), an accountant. Debtor and Labus remain as co-trustees of the

Discretionary Trust as of the date of this filing

11.     The Discretionary Trust contains a purported standard spendthrift provision in

Article IX, stating:

> No income or principal distributable or to become distributable  with respect to a
> separate trust shall be transferable, assignable or subject to being anticipated in
> any manner whatsoever, charged or encumbered by any person beneficially
> interested in such separate trust, or subject to interference or control by any
> creditors of said person, or subject to any claim for alimony or for the support of a
> spouse pursuant to a decree or separation agreement, or to be taken or reached by
> any legal or equitable process in satisfaction of any debt, liability or obligation of
> said person prior to its receipt  by said person; provided, however, that the
> provisions of this Article shall not prevent the exercise of, or transfer pursuant to
> the exercise of, any power of appointment granted hereunder.

*See* Discretionary Trust, Article IX.

12.     Additionally, the Discretionary Trust contains the following salient provisions:

> Article IV, Section 1. Income and Principal. With respect to each separate trust,
> the Trustee is hereby authorized, in the sole discretion of the Trustee, at any time
> and from time to time, to distribute all or part of the net income and/or principal
> of such separate trust to the beneficiary of such separate trust, as the Trustee
> deems desirable for the best interests of said beneficiary, or to accumulate all or
> part of such net income and add the same to the principal of such separate trust to
> be held, administered and distributed as a part thereof; provided, however, no
> distribution shall be made pursuant to the provisions of this Section which would
> discharge or satisfy a legal obligation of the Grantor.

> Article XIV. Section 3. Beneficiary as Trustee. Except with respect to any power
> of appointment, or as may be expressly provided herein to the contrary, no
> restricted Trustee (hereinafter defined) shall have any voice, determination or vote
> relating to any discretionary distribution of the income or principal of any
> separate trust hereunder, and all such decisions shall be made by the Co-Trustee
> or Co-Trustees of such separate trust who are not restricted Trustees.

3

<u>Article XV. Section 4. Definition of Restricted Trustee</u>. As used herein, with respect to any separate trust, the term "restricted trustee" shall include any current beneficiary of such separate trust and any individual who shall have a legal obligation to support any current beneficiary of such separate trust.

13.     On information and belief, the Discretionary Trust's primary assets originally consisted of interests in several entities that owned and operated skilled nursing facilities which, collectively, formed the Lexington Health Network.

14.     On January 24, 2021, Debtor, on behalf of the Discretionary Trust, filed Official Form 26 "Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest" (the "**Periodic Report**").

*Exhibit B, Periodic Report*.  The Periodic Report provides that the Discretionary Trust owns an interest in entities that own the following real property:

165 South Bloomingdale Road, Bloomingdale, Illinois 60108
10300 SW Highway, Chicago Ridge, Illinois 60415
420 W. Butterfield Road, Elmhurst, Illinois, 60126
4735 Willow Springs Road, La Grange, Il 60525
900 S. Rand Road, Lake Zurich, Il. 60047
14601 John Humphrey Drive, Orland Park, Il 60462
675 S. Roselle Road, Schaumburg, Il 60193
665 W. North Avenue, Lombard, Il 60148
555 W. Foxworth Blvd., Lombard, Il 60148
400 W. Butterfield Road, Elmhurst, Il 60126

*Exhibit B, Periodic Report*.

15.     In addition to its interest in the skilled nursing facilities, the Debtor alleges that the Discretionary Trust owns a substantial amount of personal property, including stock in Oxford Bank (which the Debtor failed to disclose in the Periodic Report), artwork, paperweights, furniture and fixtures, antiques, pen collection, gemstones and claims agaisnt third parties. *See Exhibit B - Periodic Report*.

4

16.     The Debtor has taken the position in his bankruptcy case that the Discretionary Trust assets are not property of the bankruptcy estate.

17.     The Debtor has taken this position notwithstanding that he has complete dominion and control over the Discretionary Trust and has admitted that the Discretionary Trust is nothing more than his alter ego.

18.     More specifically, at the Second 341 Meeting held on November 19, 2020, the Debtor testified that he did not include his Discretionary Trust as a creditor because he treated his Discretionary Trust and himself as one and the same and his alter ego.   More particularly, the Debtor was asked and stated the following:

MR. GOLDBERG:     Okay, same question for the Discretionary Trust. Do you owe any money to your Discretionary Trust?

MR. SAMATAS:       Yes.

MR. GOLDBERG:    How much?

MR. SAMATAS:       Started at 10 million and I'm not sure where the number is today. . . .

MR. GOLDBERG:    How come that debt wasn't listed on your bankruptcy schedules?

MR. SAMATAS:       *Because I treated it as one and the same, almost. It's my alter, that is an alter ego.*

MR. GOLDBERG:    The Discretionary Trust is your alter ego?

MR. SAMATAS:       Well the terms and conditions mean I'm gonna sue myself for this, you know, I didn't perceive the interpretation in terms of a normal creditor.

MR. GOLDBERG:    But you're saying that you didn't list it because you had considered the Discretionary Trust your alter ego?

MR. SAMATAS:       In a sense, yes. That's why I didn't do it, it didn't, I didn't interpret it like a normal creditor.

*Exhibit C, Transcript of Meeting of Creditors Held on November 19, 2020, p 60 - 61 (emphasis added)*

5

**The Alleged Transfer of Personal Property to the Discretionary Trust**

19.     On July 3, 2018, the Debtor allegedly transferred a substantial amount of his

assets to the Discretionary Trust as repayment for certain amounts allegedly due and owing to

the Discretionary Trust (the "Transfer"). These assets allegedly consisted of valuable artwork,

paperweights, jewelry and furniture, most of which are still located in the Debtor's personal

residence at 9 Natoma Way, Oak Brook, Illinois. Allegedly, a bill of sale that was executed as

part of the transaction estimated the value of the property transferred to be $3 million. *Exhibit D-

E, Assignment and Bill of Sale*

20.     While the Debtor alleges that he (or his Revocable Trust) transferred certain

personal property to the Discretionary Trust, neither the Debtor nor the Discretionary Trust has

provided the Plaintiff with an itemized list of which personal property he currently owns

individually, which personal property is owned by the Discretionary Trust, which personal

property was transferred by the Debtor or his revocable trust to the Discretionary Trust, or with a

copy of any contemporaneous list created at the time of the transfer showing which assets were

transferred.

21.     Rather, the Debtor first produced a document dated July 3, 2018 stating:

> The James Samatas Revocable Trust agrees to reduce the amount owed to the
> James Samatas Discretionary Trust by paying in kind personal property and the
> James Samatas Discretionary Trust hereby accepts stated payment in lieu of cash.
> The value shall be determined from the original purchase price of said items,
> increased/decreased by estimated market value and subject to final price realized
> at time of sale by the James Samatas Discretionary Trust.

*See Exhibit D, July 3, 2018 Transfer Document*

22.     Subsequently, in response to discovery requests, the Debtor produced a Bill of

Sale dated July 3, 2018.  *Exhibit E, Bill of Sale*

23.     The Bill of Sale provides in pertinent part:

This Bill of Sale is made between the James Samatas Revocable Trust
(Revocable Trust) and the James Samatas Discretionary Trust (Discretionary
Trust) for personal property as defined herein. The parties acknowledge the
existence of a Line of Credit issued by the Discretionary Trust in favor of the
Revocable Trust for the purpose of purchasing personal property. As of the
date below, the Revocable Trust borrowed the full amount as provided for in
the Line of Credit and an outstanding balance is due.

The Discretionary Trust is willing to accept from Revocable Trust, in lieu of
cash payment, personal property in return for reduction of the indebtedness.
Both parties recognize that the value of personal property to be transferred is
difficult to ascertain due to market conditions, nature of the property and
timing of liquidation. Accordingly, based on available information, the value
acceptable to both parties is $ 3 M and shall be applied to the Line of Credit as
a reduction of amounts owed by the Revocable Trust. Title, possession and all
rights pursuant thereto to the identified personal property shall immediately
hereafter reside with the Discretionary Trust.

The personal property subject to this Bill of Sale is generally identified as
Artwork, Paperweights, Pens, Jewelry, Furniture, Fixtures and Miscellaneous
artifacts. Primary vendors of stated personal property inventory are as follows:

Artwork: RS Johnson —two paintings
Paperweights: LH Selman — all paperweights as identified by inventory
provided by the vendor
Pens: Miscellaneous vendors of modern and vintage pens and ink bottles
Jewelry: Miscellaneous vendors of opals, colored gemstones and several
watches
Furniture: Miscellaneous vendors of vintage and antique furniture, fixtures
and residential artifacts located at 9 Natoma Drive, Oak Brook, Illinois.

24.     The terms of the Bill of Sale contradict the terms of the Transfer Document even

though the documents were purportedly executed on the same day.

25.     For example, the Bill of Sale provides "based on available information, the value

acceptable to both parties is $ 3 M and shall be applied to the Line of Credit as a reduction of

amounts owed by the Revocable Trust." *Exhibit E, Bill of Sale*.  But the Transfer Document

provides "[t]he value shall be determined from the original purchase price of said items,

increased/decreased by estimated market value and subject to final price realized at time of sale by the James Samatas Discretionary Trust." *Exhibit D*.

26.    Additionally, the Debtor's sworn statements in the Bankruptcy Case regarding when and what property the Debtor allegedly transferred to the Discretionary Trust contradict the Transfer Document and Bill of Sale.

27.    On October 22, 2020, the Debtor testified under oath at his section 341 meeting of creditors conducted by the US Trustee (the "First 341 Meeting") that other than interests in corporations and partnership and some causes of action, the Discretionary Trust owned no other personal property.

28.    More particularly, the Debtor was asked and stated the following:

MR. HOLTKAMP:    Okay, and what property's in the, in this discretionary trust?

MR. SAMATAS:    Oh my lord, that's eight nursing homes, retirement centers, home healthcare, telemedicine. They're all in the healthcare field.

MR. HOLTKAMP:    So, interest in corporations and LLCs are in that trust?

MR. SAMATAS:    Yes, you have everything, you have the LLCs, you have general, you have limited partnerships, you have some sub S corps. This all stemming from activity from 1988 on to where we are. They're all set up in the discretionary trust. And the litigation I made reference to is essentially discretionary trust litigation.

MR. HOLTKAMP:    Okay, and other than the interest in the companies, does its own any other property?

MR. SAMATAS:    Who? My revocable trust?

MR. HOLTKAMP:    Your discretionary trust.

MR. SAMATAS:    *No, other than what I mentioned*.

*Exhibit F, First 341 Meeting Transcript, pages 22-23 (emphasis added*)

8

29.     Shortly thereafter, on November 2, 2020, the Debtor filed his Statement of Financial Affairs (the "Original SOFA").  Question 19 of the SOFA provides "within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are beneficiary."  In response the Debtor checked the "no" box. *Exhibit G, Original SOFA.*

30.     On January 20, 2021, the Debtor filed an Amended Statement of Financial Affairs (the "Amended SOFA").   This time, in response to question 19, he checked the "Yes" box and stated that he transferred $3,000,000 of "paperweights and artwork" to his Discretionary Trust on July 29, 2018. *Exhibit H, Amended SOFA*.

31.     In addition, in response to question 18 of the Amended Schedules, the Debtor listed that on July 29, 2018, he transferred $3,000,000 worth of "Paperweights and artwork" as a repayment of a loan to his Discretionary Trust on his Amended SOFA.

32.     The Amended SOFA signed under oath, states nothing about the transfer of any furniture, fixtures, antiques, pen collection, jewelry and gemstones to the Discretionary Trust.  In addition, the date (July 3, 2018) of the alleged Transfer on the Bill of Sale and Transfer Document and the date is different from the date (July 28, 2018) of the alleged Transfer.

33.     At the time the Debtor allegedly transferred personal property assets to the Discretionary Trust to repay the loan, the Debtor or his Revocable Trust was party to or threatened with no less than two lawsuits, including, threatened litigation for millions of dollars with his brother, John Samatas, and a counterclaim by the law firm Cohen & Lord asserting attorney's fees due and owing in excess of $4 million.

34.     In addition, at the time of the Transfer, the Debtor was just finishing a contentious divorce proceeding with his ex-spouse, Carlye Samatas.

9

35.     Significantly, the judgment in the Debtor's divorce proceeding was entered by the Superior Court of California on July 2, 2018, just one day before the Transfer. Among other things, the Divorce Judgment required Debtor to pay Carlye Samatas $1,740,000 in spousal support, payable at the rate of $20,000 per month. *Exhibit I, Divorce Judgment*.

**Debtor's Use of and Control Over the Discretionary Trust Assets**

36.     Despite the various Discretionary Trust provisions prohibiting the Debtor's control over, and use and distribution of the trust assets, the Debtor has unfettered control and access to all assets of the Discretionary Trust, and uses the Discretionary Trust no different than his personal bank account.

37.     On September 2, 2021, Trustee sent a Rule 2004 subpoena to both Debtor and Craig Labus, in their capacities as Co-Trustees of the Discretionary Trust. *Exhibit J, 2004 Subpoena*. In response to the 2004 Subpoena, neither Debtor nor Craig Labus provided any written communications whatsoever between the two Trustees which in any way related to the Discretionary Trust.

38.     Because there are no written communications between the Debtor and the co-trustee of the Debtor's Discretionary Trust, the Debtor has unilaterally made all decisions on behalf of the Discretionary Trust for no less than the past five years.

39.     Notwithstanding the alleged Transfer, the Debtor has retained possession, custody, and control of the personal property and, on information and belief, except for certain artwork on consignment, all of the personal property is still located in the Debtor's personal residence at 9 Natoma Way, Oak Brook, Illinois.

40.     The Discretionary Trust does not insure the personal property it allegedly owns. Rather, the Debtor insures the personal property under his personal homeowner's insurance

policy, and the Debtor, not the Discretionary Trust, is the loss payee under such insurance policies.

A.    **The Discretionary Trust's Bank Accounts**

41.    On information and belief, the Debtor opened an account at BMO Harris Bank (the "BMO Account"). The Discretionary Trust's bank statements from BMO Account indicate dozens of charges for the Debtor's personal living expenses, including charges for Amazon, food, groceries, gasoline and pet supplies. The checks written from the BMO Account list the owner of the account as "James Samatas" and do not reference the Discretionary Trust. The Debtor testified at the meeting of creditors in his chapter 7 case that he had a debit card that he used to make purchases. On information and belief, these charges and withdrawals are made without the approval of co-trustee Labus. *Exhibit K, BMO Harris Statements*

42.    The Debtor has complete dominion and control over the BMO Account and the funds in that account. Additionally, on information and belief, the Debtor has complete dominion and control over other Discretionary Trust bank accounts, including accounts at Bank of America and Oxford Bank.

43.    The Debtor has and continues to withdraw funds to use as he wishes and to pay his personal liabilities from the Discretionary Trust's bank accounts without the authorization of co-trustee Labus.

B.    **The Sale of Discretionary Trust Property and Use of Proceeds**

44.    Debtor has sold, and continues to sell, assets of the Discretionary Trust without the consent or authorization of co-trustee Labus.

45.    The Debtor owned certain pieces of valuable artwork, which he claims that he

transferred to his Discretionary Trust.  The artwork was consigned to RS Johnson, a fine art

dealer in Chicago. *Exhibit L, Consignment Agreement*.

46.    On December 10, 2018, RS Johnson sold Pablo Picasso, *Venus and Amour, After*

*Cranach*, 1949 for $65,000. The check was written to the Debtor individually and the Debtor

deposited in a Bank of America account ending in 8265, which is an account owned by the

Debtor's revocable trust. *Exhibit M, Check Copies*

47.    On February 7, 2019, RS Johnson sold Jean Metzinger, *Young Woman with a*

*Dish of Fruit,* oil on canvas for $235,000. On February 7, 2019, RS Johnson wrote a check to

Debtor in the amount of $100,000. The Debtor deposited the check into the Debtor's individual

account at Citibank ending in 9351. Subsequently, on April 17, 2019, RS Johnson wrote a check

to Debtor in the amount of $135,000, representing the remaining proceeds. The Debtor deposited

the check into the Debtor's individual account at Citibank ending in 9351. *Exhibit M, Check*

*Copies*

48.    On November 25, 2019, RS Johnson sold Giovanni Battista Piranesi, *Vedute della*

*Piazza de Monte Cavello*, 1773, etching for $7,500.  On November 25, 2019, RS Johnson wrote

a check to Debtor in the amount of $7,500. The check was deposited into a Bank of America

account ending in 8265, which is an account owned by the Debtor's revocable trust. *Exhibit M,*

*Check Copies*.

49.    The Debtor has deposited proceeds from the sale of Discretionary Trust property

into his personal bank accounts or his Revocable Trust's bank accounts.

50.    On information and belief, the Debtor has the ability to sell or dispose of

Discretionary Trust assets without co-trustee Labus's consent.

51.     The Debtor had and continues to have unfettered control to sell assets of the Discretionary Trust without the consent of co-trustee Labus.

**C.      The Debtor's Unilateral Ability To Forgive Loans Made By The Discretionary Trust**

52.     The Debtor has complete dominion and control over the Discretionary Trust because the Debtor can unilaterally forgive loans made by the Discretionary Trust, including, but not limited to, loans that the Discretionary Trust made to him or his revocable trust.

53.     The Debtor apparently caused the Discretionary Trust to make several loans to his Revocable Trust and himself, totaling in excess of $10 million.

54.     For example, on or about January 1, 2000, the Debtor as trustee for the James Samatas Revocable Trust, entered into a Revolving Demand Note by James Samatas Discretionary Trust U/A/D, 5/6/97 in favor of the Discretionary Trust in a revolving amount of no more than $10,000,000.  *Exhibit N,Demand Note*.

55.     The Demand Note required that the outstanding principal balance of such loans and any repayment of such loans would be set forth from time to time on Schedule A attached to the Note.

56.     On information and belief, Schedule A to the Demand Note, listing the principal balance of such loans and any repayment of such loans, was never kept.

57.     On information and belief, the Debtor or his revocable trust have never paid any interest on the Demand Note to the Discretionary Trust.

58.     As set forth above, the Debtor or his revocable trust allegedly transferred a substantial amount of personal property assets to the Discretionary Trust as repayment for certain amounts due and owing under the Revolving Note to the Discretionary Trust.

13

59.     According to the Debtor, the transfer of the personal property reduced the amount owed under the Revolving Note by $3 million. On information and belief, the remaining balance due under the Revolving Note exceeded $7 million.

60.     On July 20, 2021, subsequent to the Petition Date, the Debtor executed and caused to be filed, on behalf of the Discretionary Trust, a Waiver of Claim whereby the Discretionary Trust waived any claim against the Debtor's bankruptcy estate and any right to receive a distribution from the estate. *Exhibit O, Claim Waiver.* More specifically, the Waiver of Claim provided:

> NOW COMES the James Samatas Discretionary Trust u/t/a 9/8/88 ("Trust"), by its Trustee, James Samatas, and through this Waiver of Claim, the Trust hereby waives any claims that the Trust has or may have against the bankruptcy estate of James Samatas. Thus, the Trust will not be filing any Proofs of Claim in this case, and the Trust will not be asserting any rights to receive funds or other property in this bankruptcy case as a pre-petition creditor of James Samatas, including if the bankruptcy estate of James Samatas is a surplus estate.

61.     On information and belief, the Debtor acted without co-trustee Labus's consent or knowledge in executing the Consent Waiver and waiving any claim that the Discretionary Trust has against the Debtor's estate and filing the Consent Waiver with the Bankruptcy Court.

62.     Accordingly, the Debtor had and continues to have dominion and control over the Discretionary Trust, as he has the ability to not only loan money to himself, but also the ability to forgive such loans.

63.     In essence, the Consent Waiver was nothing more than the Debtor making a distribution of the corpus of the Discretionary Trust to himself in the form of forgiveness of debt.

### D.  **The Debtor's Unilateral Ability To Have The Discretionary Trust Guaranty His Personal Debts**

64.     On or around August 15, 2021, the Debtor, in his capacity as trustee of the Discretionary Trust, entered into a Guaranty on behalf of the Discretionary Trust in favor of

14

Parker Mills, LLP whereby the Discretionary Trust guaranteed certain of the Debtor's unpaid prepetition obligations to Parker Mills. *Exhibit P, Parker Mills Guaranty*.

65.    To secure the obligations under the Parker Mills Guaranty, the Debtor, in his capacity as co-trustee of the Discretionary Trust, executed a Stock Pledge Agreement in favor of Parker Mills whereby the Discretionary Trust pledged its interest in shares of stock of Oxford Financial Corporation.  *Exhibit Q, Stock Pledge Agreement*

66.    On information and belief, the Debtor acted unilaterally and without co-trustee Labus's consent or knowledge in executing the Guaranty and Stock Pledge Agreement and in granting a security interest in certain of the Discretionary Trust's assets in order to secure the Debtor's personal loan to Parker Mills.

67.    The Debtor's ability to unilaterally have the Discretionary Trust guaranty debts owed by the Debtor individually, and then to pledge assets of the Discretionary Trust to secure such guaranty, constitutes dominion and control over the corpus of the Discretionary Trust.  The Debtor's actions allowed him to unilaterally pick and choose which of his personal creditors can reach the corpus of the Discretionary Trust.

68.    On information and belief, the Debtor similarly granted creditor Howard and Howard a security interest in certain of the Discretionary Trust's assets consisting of the Oxford Financial Corporation stock. *Exhibit R, UCC Financing Statement.*

## COUNT I

**(Determination That Discretionary Trust is Property of the Estate (11 U.S.C. § 541)**

69.    The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 68 above, as if fully restated herein.

70.     Section 541(c) of the Bankruptcy Code provides that "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

71.     Section 541(c) excepts from property of the estate property that the Debtor owns in a valid spendthrift trust in accordance with state law.

72.     Among the factors courts consider in determining whether a valid spendthrift trust exists is whether the beneficiary has exclusive and effective dominion and control over the trust corpus, distribution of the trust corpus and termination of the trust. The degree of control which a beneficiary exercises over the trust corpus is the principal consideration under Illinois law.

73.     As set forth herein, the Debtor has exclusive dominion and control over the assets of the Discretionary Trust and unfettered access to those assets as evidenced by:

> A.     The Debtor's ability to transfer funds into Discretionary Trust bank accounts and to access and withdraw those funds;
>
> B.     The Debtor's ability to use a debit card for personal expenditures at any time;
>
> C.     The Debtor's ability to make loans on behalf of the Discretionary Trust, then subsequently forgive the loans or waive any claim to payment;
>
> D.     The Debtor's ability to pledge assets of the Discretionary Trust as security for personal debts;
>
> E.     The Debtor's ability to sell or otherwise dispose of Discretionary Trust assets in his sole discretion; and
>
> F.     The lack of any communication between the Co-Trustees regarding the administration of the Discretionary Trust.

16

74.     By reason of the foregoing, the court should find that the Discretionary Trust is property of the bankruptcy estate under Section 541 of the Bankruptcy Code.

WHEREFORE, the Plaintiff requests that this Court enter judgment in his favor and find that the Discretionary Trust is property under the bankruptcy estate; and grant such other and further relief as the Court deems just and equitable.

## COUNT II
### (Alter Ego-Pled in the Alternative)

75.     The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 68 above, as if fully restated herein.

76.     As set forth above, Debtor has unlimited and unrestricted access to the assets of the Discretionary Trust.

77.     The Debtor has also disregarded most of the Discretionary Trust formalities as evidenced by the fact that there are no communications between the Debtor and co-trustee Labus, regarding the management of the Discretionary Trust, that the bank accounts of the Discretionary Trust are used to pay the Debtor's expenses, and that the Debtor uses the assets of the Discretionary Trust as collateral for various personal debt.

78.     In addition, by reason of the foregoing, the Debtor has expressly admitted that the Discretionary Trust is an alter ego of the Debtor.

WHEREFORE, the Plaintiff requests that this Court enter judgment in his favor and against the Defendant on Count II as follows: (i) declaring that the Discretionary Trust is an alter ego of the Debtor; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT III
### (Avoidance of Fraudulent Conveyance-11 U.S.C. §544; 740 ILCS 160/6)

17

79.     The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 68 hereof, as if fully restated herein.

80.     The Illinois Uniform Fraudulent Transfer Act provides that: "A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." 740 ILCS 160/6(2).

81.      At the time that the Debtor made the Transfer, creditors existed who held claims against the Debtor. As set forth above, the Debtor had been sued or threatened with suit and the transfer occurred shortly after a substantial debt was incurred.

82.     At the time of the Transfer, the Debtor was insolvent. The Debtor was unable to pay his debts as they came due. Moreover, the value of the Debtor's assets were less than the amount of his debt.

83.     The Transfer was made to an insider. The Debtor himself is a co-trustee of the Discretionary Trust and, as previously set forth, had unfettered control over the day-to-day management of the Discretionary Trust. Thus the Debtor made the transfer to himself.

84.     The Transfer was not disclosed on the Debtor's original bankruptcy schedules, but only disclosed on later amended filings.

85.     The Debtor received less than reasonably equivalent value for the Transfer

WHEREFORE, the Plaintiff requests that this Court enter judgment in his favor and against the Defendant on Count III as follows: (i) avoiding the Transfer; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT IV
### (Avoidance of Fraudulent Conveyance-11 U.S.C. §544; 740 ILCS 160/5)

86.    The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 68 hereof, as if fully restated herein.

87.    The Illinois Uniform Fraudulent Transfer Act provides that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor." 740 ILCS 160/5

88.    At the time the Debtor made the Transfer, creditors existed who held claims against the Debtor. As set forth above, the Debtor had been sued or threatened with suit and the transfer occurred shortly after a substantial debt was incurred.

89.    At the time of the Transfer, the Debtor was insolvent. The Debtor was unable to pay his debts as they came due. Moreover, the value of the Debtor's assets were less than the amount of his debt.

90.    The Transfer was made to an insider. The Debtor himself is a co-trustee of the Discretionary Trust and, as previously set forth, had unfettered control over the day-to-day management of the Discretionary Trust. Thus, the Debtor made the Transfer to himself.

91.    The Debtor retained possession and control over the property transferred, as most of the personal property remains inside his home at 9 Natoma Drive, Oak Brook, Illinois.

92.    The Debtor made the Transfer with actual intent to hinder, delay or defraud creditors.

93.    The Debtor received less than reasonably equivalent value for the Transfer.

94.    The transfer of the personal property was not disclosed.

WHEREFORE, the Plaintiff requests that this Court enter judgment in his favor and against the Defendant on Count IV as follows: (i) avoiding the Transfer; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT V
### (Injunctive Relief)

95.     The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 68 hereof, as if fully restated herein.

96.     Based upon the foregoing, there is a strong likelihood that the Court will find that the assets of the Discretionary Trust are property of the bankruptcy estate.

97.     Many of the Discretionary Trust's assets are located in the Debtor's personal residence and can easily be liquidated by the Debtor. Additionally, the Trustee is informed and believes that the Discretionary Trust is set to receive approximately $2 million from the sale of stock in Oxford Bank, which is currently in the process of being sold.

98.     There is a strong likelihood that the Debtor will either transfer or encumber the assets of the Discretionary Trust, specifically the funds received from the sale of the Oxford Bank stock. The Debtor, as trustee of the Discretionary Trust, has already pledged the stock as security to pay his individual debts and has also pledged the stock for fees due and owing to creditors.

99.     The Court should enter an injunction prohibiting the Debtor or any trustee of the Discretionary Trust from transferring or encumbering any asset of the Discretionary Trust until the court has made a determination as to whether the Discretionary Trust assets are property of the estate.

WHEREFORE, the Plaintiff requests that this Court enter judgment in his favor and against the Defendant on Count V as follows: (i) enjoining any transfer of any assets owned by

the Discretionary Trust; and (ii) granting such other and further relief as the Court deems just and

equitable.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>Frank J. Kokoszka, not individually,<br>But as Chapter 7 Trustee</td></tr>
<tr><td>Dated: December 20, 2021</td><td>By: <u>*/s/ Joshua D. Greene  /s/*</u><br>    One of his attorneys</td></tr>
</table>

Joshua D. Greene
Thomas E Springer
Springer Larsen Greene, LLC
300 South County Farm Road, Suite G
Wheaton, IL 60187
630.510.0000
jgreene@springerbrown.com